IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHEILA J. DAVIS                                                    PLAINTIFF

                         v.                    Civil No. 12-2056

MICHAEL J.  ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sheila Davis, brings this action under 42 U.S.C. § 405(g), seeking judicial review of

a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim

for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and

XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In

this judicial review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff filed her applications for SSI and DIB on January 13, 2009, alleging an onset date of

February 4, 2008, due to bipolar disorder, depression, memory loss, fibromyalgia, and arthritis.  Tr. 125-

134, 156, 194.  The Commissioner denied Plaintiff's application initially and on reconsideration.  Tr.

46-64.  An administrative hearing was held on May 17, 2011.  Tr. 22-45.  Plaintiff was present and

represented by counsel.

At the time of the hearing, Plaintiff was 49 years old and possessed the equivalent of a high

school education.  Tr. 26-27, 160.  Plaintiff had past relevant work ("PRW") experience as a cashier.

Tr. 29-30, 148-149, 157, 204.

On August 6, 2010, the ALJ found Plaintiff's fibromyalgia, osteoarthritis of the knees, and

obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments

in Appendix 1, Subpart P, Regulation No. 4. Tr. 14-16.  After partially discrediting Plaintiff's subjective

complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to

lift up to 20 pounds occasionally and up to 10 pounds frequently, stand for up to 6 hours out of 8 hour workday with normal breaks, sit for up to 6 hours out of an 8 hour workday with normal breaks.  In other words, I find that the claimant is able to perform a full range of "light" work on a sustained basis. . . . .

Tr. 17.  The then concluded Plaintiff could perform her PRW as a cashier.  Tr. 20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 17, 2012.  Tr. 1-5.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 10, 13.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties.  The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings

2

of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Of particular concern to the undersigned in the ALJ's conclusion that Plaintiff's mental impairments were not severe. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575,

3

577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520©).  An impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on their ability to do basic work activities.  *See* SSR 85-28.

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment.  *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).  Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased.  *Id.*  Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.*  Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate.  *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999).  This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

In the present case, the medical evidence makes clear that Plaintiff was diagnosed with bipolar I disorder and obsessive compulsive disorder.  She began complaining of depressive symptoms in February 4, 2008, when she reported sadness, irritability with frequent crying spells, and bursts of energy.  James Saunders, a Physician's Assistant for Dr. John R. Williams at the Northside Clinic recommended she undergo a psychological evaluation.  Tr. 255-257.

From February 8, 2008, until November 2008, Plaintiff was treated by Dr. Monty Atchley at the Behavioral Health Department.  Her assessment revealed various symptoms, including worry, insomnia, fatigue, impaired concentration, irritability, muscle tension, headaches, low mood, sleep and appetite disturbance, changes in energy, poor concentration, hopelessness and helplessness, a marked decrease

4

in pleasure, marked agitation, severe pain, racing thoughts, pressured speech, grandiose feelings, easy distraction, periods of high activity, rapid shifts in mood, and intense periods of rage.  Dr. Atchley also noted some obsessive behaviors regarding cleaning her home.  He diagnosed her with bipolar I disorder, most recent episode mixed, as well as obsessive-compulsive disorder.  Tr. 320-321.  On February 18, 2008, he prescribed Tramadol, Neurontin, and Lithium, and noted that she might need to see a pain specialist.  Tr. 254-255.  On March 3, 2008, Plaintiff told Mr. Saunders that she felt calmer on Lithium, but was still experiencing insomnia at night and sleepiness during the day.  So, he prescribed Hydroxyzine Hydrochloride in addition to her other medications.  Tr. 253-254.  However, Plaintiff did not feel that the Hydroxyzine helped her sleep, so additional techniques for stress reduction and relaxation were discussed on March 5, 2008.  Tr. 320. And, when she returned on April 2, 2008, her severe depression persisted.  Tr. 319-320.  Plaintiff was also exhausted due to the insomnia. Dr. Atchley introduced a technique to stop intrusive thoughts.  Tr. 319-320.  Her extreme depression continued in May 2008, at which time the option of increasing her Paxil dosage was discussed.  Tr. 319.

On May 21, 2008, Mr. Saunders increased her Paxil dosage, and Dr. Williams agreed with the recommendation.  Tr. 252-253.  By July 28, 2008, she was reporting a more stable mood.  Accordingly, Mr. Saunders maintained her medication regimen.  Tr. 250-251.  However, on July 30, 2008, Plaintiff's extreme depression returned, and she reported sleeping 16 hours per day or more.  Tr. 318-319.  She felt the Lithium was helping her mood swings, but it had no impact on her depression.

On November 3, 2008, Plaintiff remained depressed, although her family thought the Lithium had improved her mood.  Tr. 243-245.  Mr. Saunders prescribed Trazodone, Lamictal, Levothyroxine, Hydroxyzine Hydrochloride, Lithium, Neurontin, Tramadol, and Glucosamine.  Tr. 243-245.  She returned to Dr. Atchley's office on November 5, 2008, with complaints of continued significant depression, severe anger, and difficulty sleeping.  He opined that the severe pain was adding to her anger and mood issues. Tr. 318.

5

On January 20, 2009, Plaintiff reported being under a great deal of stress. Tr. 240-241. And, on March 19, 2009, she reported continued problems with depression and insomnia. Tr. 310-311. Plaintiff did not feel that the Lamictal was helping her depression. Mr. Saunders prescribed Trazodone, an increased dosage of Lamictal, and Levothyroxine.

On April 18, 2009, the Administration sent Plaintiff for a consultative psychological evaluation with Dr. Beth Jeffries. Tr. 260-262. At this time, Plaintiff acknowledged having undergone past psychiatric treatment, but denied hospitalization or current treatment. She stated that she could no longer afford therapy. Her mood was steady and euthymic and her affect was full range. Dr. Jeffries concluded that she possessed an average fund of information and an estimated IQ in the average range. However, she was not able to interpret common proverbs. Dr. Jeffries diagnosed Plaintiff with adjustment disorder, mixed reaction, mild, and alcohol abuse, in full remission. She noted that Plaintiff was not working, and was under a great deal of stress from her daughter. Plaintiff was also having a difficult time adjusting to her current situation and her chronic pain. Dr. Jeffries recommended that she seek therapy from an agency of her choice to help her obtain some coping skills and in helping her deal with her chronic pain.

On June 10, 2009, Plaintiff told Mr. Saunders that she did not want to get out of bed due to pain. Tr. 305-307. She had become increasingly depressed, was stressed due to family issues, continued to experience insomnia, and exhibited racing thoughts. He prescribed Lasix, Cymbalta, and Lyrica, and noted that Plaintiff would receive her medication through the patient assistance program.

On December 3, 2009, Plaintiff's depression and insomnia continued. Tr. 300-301. And, when she returned on February 17, 2010, she reported sleeping much of the day. Tr. 298-299. Cymbalta no longer seemed to be effective, although the Lamictal did make her less irritable. Mr. Saunders prescribed Lasix, Trazodone, Tizanidine (with adjustments), Neurontin, and Levothyxine.

On September 20, 2010, Dr. Robert Spray conducted a psychological evaluation of Plaintiff. Tr. 326-329.[1] She reported crying spells, ruminating, and poor sleep. Plaintiff told Dr. Spray that she had been receiving treatment from Dr. Atchley but had to stop going due to finances. Tr. 327. She reported having irritability without cause, episodes of spending money when she was sad, anxiety attacks when she was around a lot of people, and getting so mad she wanted to hurt people. She also had some obsessive symptoms, such as having to wash the dishes in a certain order and a certain way. And, Plaintiff reported memory problems, stating she had to use sticky notes to remind herself of things. Her affect was appropriate and variable, and her mood euthymic. Dr. Spray diagnosed her with bipolar I disorder, depressed phase; anxiety disorder, not otherwise specified; alcohol abuse, current status unclear; and cannabis abuse, in long-term remission. Tr. 328-329.

In conjunction with his examination, Dr. Spray also completed an assessment of Plaintiff's work-related abilities. Tr. 330-333. He indicated that Plaintiff was severely limited in her ability to maintain regular attendance; demonstrate reliability; and behave in an emotionally stable manner. He further indicated that she was markedly limited in her ability to relate to coworkers; interact with supervisors; deal with work stresses; maintain concentration for extended periods of time; perform activities within a schedule; be punctual within customary tolerances; work in coordination or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday; complete a normal workweek; deal with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Many other areas of functioning were indicated to be moderately limited.

---

[1] This evidence was not before the ALJ, but it was submitted to and reviewed by the Appeals Council, as is noted in their decision denying Plaintiff's request for review. Tr. 1-5. Therefore, we must review it in combination with the other evidence of record. *See Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000) (In such cases, we must determine if the record as a whole, including evidence that is new and material, supports the ALJ's determination.).

However, he determined that drug or alcohol abuse was not a major contributing factor to Plaintiff's other diagnosed impairments. Tr. 330-332.

After reviewing all of the evidence, we believe remand is necessary to allow the ALJ to reevaluate the severity of Plaintiff's mental impairments. Although Plaintiff did not participate in mental health treatment throughout the relevant time period, she was treated by Dr. Atchley until she could no longer afford his services, made consistent complaints of mental impairments, and was prescribed medications to treat said impairments. And, it seems clear to the undersigned that these impairments would have more than a minimal effect on her ability to do basic work activities. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).

The undersigned is also bothered by the ALJ's RFC assessment in this case. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue,* 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue,* 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones,* 619 F.3d at 971 (RFC finding must be

8

supported by some medical evidence).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC."  *Id*.

The record reveals that Plaintiff was suffering from fibromyalgia.  Fibromyalgia is a condition that causes pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues.  Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The disease is chronic, and "[d]iagnosis is usually made [only] after eliminating other conditions." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003).  The principal symptoms are generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep.  *See* Joseph J. Biundo, *Fibromyalgia*, http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_disorders/fibromyalgia.html#v908031 (last accessed November 1, 2012).  The diagnosis is based on clinical criteria, including tenderness at some of the 18 specified tender points.  *Id*.  However, most experts no longer require a specific number of tender points to make the diagnosis.  *Id*.

Fibromyalgia patients tend to be stressed, tense, anxious, fatigued, ambitious, and sometimes depressed.  *Id*.  And, although fibromyalgia tends to be a chronic condition, it can spontaneously disappear and reappear depending on the patient's stress levels.  *Id*. As a result, the Eighth Circuit has held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.  *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998).

Treatment for fibromyalgia is conservative in nature, consisting of stretching and aerobic exercises, stress management, tricyclic antidepressants or cyclobenzaprine to improve sleep, and

analgesics. *Id*.   Rarely, trigger point injections are used to treat incapacitating areas of focal tenderness, but are not relied on as the primary treatment for this condition. *Id*.

Here, we note that the Plaintiff consistently sought out treatment for depressive symptoms, aches and pains, stiffness and soreness, insomnia, and fatigue. After at least a year of complaints, Mr. Saunders, Dr. William's physician's assistant, diagnosed Plaintiff with fibromyalgia in July 2009. Tr. 303-305. And, in spite of prescribing medications to treat her fibromyalgia, her pain remained constant.

On April 23, 2009, Dr. Wojciech Dulowski performed a consultative physical examination. Plaintiff reported pain all over, difficulty walking, problems with forgetfulness, and a history of fibromyalgia and arthritis. Tr. 266-271. On exam, 16 out of 18 fibromyalgia trigger points were positive. Tr. 270. She also had some tenderness in her lumbosacral spine. Tr. 267. Dr. Dulowski diagnosed Plaintiff with a history of bipolar disorder; history of hypothyroidism; history of fibromyalgia; and status post open cholecystectomy, appendectomy, c-section, and right carpal tunnel release. Tr. 271.

He did not, however, indicate what the significance was of her exhibiting 16 of the 18 possible fibromyalgia trigger points.

On September 21, 2010, Plaintiff saw Dr. Terry Hoyt. Tr. 322-325.[2] She reported chronic pain that was worse in her hands, feet, and legs. She also reported problems with memory loss and mood swings. Fourteen out of 18 fibromyalgia trigger points were positive. He diagnosed her with osteoarthritis, rheumatoid arthritis, fibromyalgia, hypothyroidism, and bipolar disorder. Tr. 325. He assessed her work-related abilities and indicated that she could sit for 45 minutes at a time and three hours total per day; stand for 30 minutes at a time and one hour total per day; and walk for 45 minutes at a time and up to one hour per day. She could occasionally lift and carry up to 10 pounds and needed frequent rest breaks. Additionally, Dr. Hoyt noted that her feet should be elevated and that she had limits

---

[2]Again, This evidence was not before the ALJ, but it was submitted to and reviewed by the Appeals Council, as is noted in their decision denying Plaintiff's request for review. Tr. 1-5.

on operating foot controls. Her ability to reach, push/pull, and work overhead were limited as well. According to Dr. Hoyt, she should only rarely grasp, bend, and climb stairs or ramps and never finger, squat, crawl, stoop, crouch, kneel, balance, twist, and climb ladders or scaffolds. He also indicated that she should completely avoid work near hazardous conditions, unprotected heights, dangerous moving machinery, handling vibrating tools, exposure to extremes and sudden or frequent changes in temperature and/or humidity, and driving/riding in automotive equipment. Tr. 322-324. Dr. Hoyt found that she had a limited range of motion with notable crepitance and positive tender points. He was of the opinion that she suffered from multiple disabling disease processes.

The ALJ discredited Plaintiff's subjective complaints, stating that her treatment had been essentially routine and conservative in nature. However, as previously noted, treatment for fibromyalgia is conservative. There are no surgical options available to treat this disease. The ALJ also attempted to discredit Plaintiff because she did not seek out treatment from a specialist. One can only assume he is referring to a rheumatologist. We note, however, that the record is replete with references to Plaintiff's inability to afford medications, objective tests, and specialist referrals. Records reveal that she was being treated by the physician's assistant, rather than the doctor, which is an option doctor's often use so that they can continue to treat patient's who have little to no funds available to pay for their services. Plaintiff also received her medications through the patient assistance program. *See Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003) (A lack of funds may justify a failure to receive medical care.). As this was not considered by the ALJ, we also believe that remand is necessary to allow the ALJ to reconsider the evidence concerning Plaintiff's fibromyalgia and her lack of financial resources to obtain medical treatment.

**V.      Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and recommend that the case be reversed and remanded to the Commissioner for further consideration

11

pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of November 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

12